IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUBEN ESCANO,

    Plaintiff,

v.                                                     Case No. 2:24-cv-00908-KWR-GBW

THE ADT SECURITY CORPORATION, and
JOHN DOE,

    Defendants.

### MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court upon Defendant's Motion to Dismiss (Doc. 4). Having reviewed the record and applicable law, the Court finds that Defendant's Motion to Dismiss is not well taken and, therefore, is **DENIED**.

At issue is whether Plaintiff plausibly alleged that Defendant The ADT Security Corporation ("ADT")[1] is vicariously liable under the Telephone Consumer Protection Act ("TCPA") and the New Mexico Unfair Practices Act ("UPA") for allegedly unlawful calls made by a third-party caller, John Doe Caller. The Court concludes that Plaintiff plausibly alleged vicarious liability.

### BACKGROUND

Plaintiff is proceeding *pro se* but is a professional litigant who has filed many cases in this district challenging allegedly unlawful telephone calls. *See Escano v. Innovative Fin. Partners,*

---

[1] ADT was so named in the complaint, although ADT represents it is ADT LLC. *See* Doc. 4 at 1.

*LLC*, No. CV 23-277 MLG/GJF, 2024 WL 243558, at *2 (D.N.M. Jan. 23, 2024), *report and recommendation adopted,* No. 223CV00277MLGGJF, 2024 WL 943958 (D.N.M. Mar. 5, 2024).

Plaintiff alleges that between June 24, 2020 and September 1, 2021, he received fourteen telemarketing calls from a John Doe caller using spoofed telephone numbers. Compl., Doc. 1-1 at ¶¶ 18, 54-67. All calls began with an artificial voice "Hi! This is Frank from Alarms Plus!" *Id.* at ¶ 2. In one call, the caller stated he was authorized by home alarm companies to offer home alarm systems via telephone. *Id.* at ¶ 46. In another call, the caller offered Plaintiff a home alarm system from ADT. *Id.* at ¶ 47. Plaintiff asserts that Defendant ADT is vicariously liable for the alleged illegal robocalls of the John Doe Caller.

In his complaint, Plaintiff asserts thirteen claims against the John Doe Caller and ADT, including seven Telephone Consumer Protection Act claims (Counts I-VII), five New Mexico Unfair Practices Act claims (Counts VIII-XII), and one New Mexico trespass to chattels claim (Count XIII). Generally, these claims assert that the calls were unlawful as Defendants (1) utilized an ATDS to transmit a telephone call to a cellphone; (2) utilized an artificial or prerecorded voice to deliver a message to a telephone; (3) utilized an ATDS in such a way that two or more telephone lines are engaged simultaneously; (4) allowed more than a two-second delay before responding to an answered call; (5) called a telephone number listed on Federal Trade Commissions' National Do Not call registry; (6) failed to have a written policy for maintaining an internal do-not-call list; and (7) failed to provide contact information for the sponsor of the call or disclose the name of the sponsor within fifteen seconds.

## DISCUSSION

I. **Law relevant to TCPA and New Mexico UPA claims.**

Plaintiff asserts several claims under the Telephone Consumer Protection Act ("TCPA") and the New Mexico Unfair Practices Act ("UPA") challenging the alleged unlawful calls. Both the TCPA and the New Mexico UPA "generally prohibit[ ] robocalls to cell phones and home phones." *See Escano v. RCI LLC* ("*RCI*"), No. CV 22-360 DHU/GJF, 2022 WL 17251273, at *13 (D.N.M. Nov. 28, 2022), *R&R adopted*, 2023 WL 34525 (D.N.M. Jan. 4, 2023) (quoting *Barr v. Am. Ass'n of Pol. Consultants*, 140 S. Ct. 2335, 2343 (2020)); *see also* 47 U.S.C. § 227; N.M. Stat. Ann. § 57-12-22.

Section 227(b) of the TCPA forbids autodialed calls to a cellular phone without prior consent of the called party, and Section 227(c) prohibits calls to any subscriber on the do-not-call registry. 47 U.S.C. §§ 227(b)(1), (c)(3)(F).

The New Mexico UPA makes certain practices unlawful when making a telephone solicitation. NMSA 1978 § 57-12-22(A). For example, the use of an automated telephone dialing system with a prerecorded message to solicit persons to purchase goods or services is prohibited outside of an established business relationship. *Id.* It also prohibits making a telephone solicitation for the purchase of goods or services without disclosing within fifteen seconds the name of the sponsor. NMSA 1978 § 57-12-22(B). It is also illegal to call a telephone number on the do not call registry, or to circumvent a caller ID. NMSA 1978 § 57-12-22(C). The Court may look to federal law in interpreting the UPA. NMSA 1978 § 57-12-14 ("It is the intent of the legislature that in construing Section 3 of the Unfair Practices Act the courts to the extent possible will be guided by the interpretations given by the federal trade commission and the federal courts.").

Plaintiff also asserts a trespass to chattel claim. Trespass to chattel "is the intentional use or interference with a chattel which is in the possession of another, without justification." *Tex.-N.M. Pipeline Co. v. Allstate Constr., Inc.*, 1962-NMSC-026, ¶¶ 3-7, 70 N.M. 15, 369 P.2d at 402-03. The tort requires an intention to act "for the purpose of interfering with the chattel or with knowledge that a disturbance thereof is substantially certain to occur." *Tex.-N.M. Pipeline Co. v. Allstate Const., Inc.*, 1962-NMSC-026, ¶¶ 3-7, 70 N.M. 15, 369 P.2d at 402-03.

## II.    Plaintiff plausibly alleged that Defendant ADT is vicariously liable.

Plaintiff alleges that Defendant ADT is vicariously liable for John Doe caller's alleged unlawful calls. Defendant ADT moved to dismiss all claims against it, asserting that Plaintiff failed to plausibly allege it was vicariously liable under the TCPA or the New Mexico UPA for the actions of the John Doe caller. The Court agrees with Plaintiff and concludes that Plaintiff plausibly alleged vicarious liability.

### A.    Agency law.

Plaintiff alleges that Defendant ADT is vicariously liable under an agency relationship. "The first element of a TCPA claim is that 'the defendant called a cellular telephone number.'" *Escano v. Concord Auto Protect, Inc.*, No. 22-2096, 2023 WL 4247703, at *2 (10th Cir. June 29, 2023), quoting *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1043 (9th Cir. 2012). Defendants in TCPA actions may be held either directly or vicariously liable for making calls. *See Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014).

Regarding "direct liability, '[t]he plain language of section 227(b)(1)(A)(iii) imposes liability upon persons that "make" a telephone call or text.' " *Childress v. Liberty Mut. Ins. Co.*, No. 17-CV-1051 MV/KBM, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018) (quoting *Melito v. Am. Eagle Outfitters, Inc.*, No. 14-CV-02440, 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 39, 2015)).

Although Plaintiff admits that ADT did not directly call him, he asserts ADT is vicariously liable for the actions of John Doe Caller. Plaintiff argues that Defendant ADT is vicariously liable as John Doe caller was ADT's agent.

"A party may be vicariously liable for its agent's violation of the TCPA." *Escano v. Concord Auto Protect, Inc.*, No. 22-2096, 2023 WL 4247703, at *3 (10th Cir. June 29, 2023) (unpublished), *citing Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 168 (2016). "[A]gency is the fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1212 (10th Cir. 2022) (internal quotation marks omitted).

A principal can be liable for an agent's TCPA violations based on "the bedrock theories of agency: actual authority, apparent authority [and] ratification[.]" *Jones v. Royal Admin. Servs., Inc.*, 887 F.3d 443, 449 (9th Cir. 2018); *see also Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1250 (10th Cir. 2020) (generally discussing agency formation under actual authority and apparent authority theories).

Similarly, New Mexico Law recognizes vicarious liability and agency theory. *Mohon v. Agentra LLC*, 400 F. Supp. 3d 1189, 1236 (D.N.M. 2019) ("[a]uthority is the power of the agent to affect the legal relations," including liability "of the principal by acts done in accordance with the principal's manifestations of consent to [the agent]." *Romero v. Mervyn's*, 1989-NMSC-081, ¶ 11, 109 N.M. 249, 784 P.2d 992, 996 (quoting Restatement (Second) of Agency § 7 (1958))).

No party has argued there is any relevant distinction in New Mexico or federal common law on the formation of an agency relationship. Rather, the Tenth Circuit has held that New Mexico state courts have adopted common-law authorities on agency, including the Restatement (Second)

of Agency and the Restatement (Third) of Agency. *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1250 (10th Cir. 2020) ("And in any event, as shown below, the Restatements and New Mexico case law are aligned on fundamental agency questions such as the formation of an agency relationship."). Therefore, it appears that the analysis of agency formation under federal common law or New Mexico law is similar

B. **Plaintiff plausibly alleged an agency relationship under an actual authority relationship.**

Plaintiff has plausibly alleged that the John Doe Caller is an agent of Defendant ADT under an actual authority theory of agency formation. Therefore, Plaintiff has plausibly alleged that Defendant ADT is vicariously liable for the alleged calls by John Doe Caller.

An agent acts with "actual authority" when, "at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act." *Alfaro-Huitron v. Cervantes Agribusiness*, 982 F.3d 1242, 1251 (10th Cir. 2020) (citation omitted). Therefore, "[a]ctual authority turns on the reasonable belief of the *agent* based on such acts and communications." *Id.* (emphasis in original). Actual authority stems from a principal's expressions to an agent. *See 1-800 Contacts, Inc. v. Lens.com, Inc.,* 722 F.3d at 1251.

"To be sure, all agents are subject to the control of the principal; control is an essential "element of the relationship." *Alfaro-Huitron*, 982 F.3d at 1252 (10th Cir. 2020), *citing* Restatement (Third) of Agency § 1.01 cmt. f(1) ("An essential element of agency is the principal's right to control the agent's actions."). "[A]gency is the fiduciary relationship that arises when one person (a principal) manifests assent to another person (an agent) that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise

6

consents so to act." *Cruz v. Farmers Ins. Exch.*, 42 F.4th 1205, 1212 (10th Cir. 2022) (internal quotation marks omitted).

Plaintiff alleges as follows. John Doe Caller made calls on behalf of and under the direct, implied, or apparent authority of ADT. Compl. Doc. 1-1 at ¶16. ADT authorizes and directs certain telemarketing companies to sell it home alarm systems on its behalf. *Id.* at ¶¶ 35, 36. ADT directs its dealers, including John Doe Caller, to make calls "en-masse" to telephone subscribers throughout the country in order to schedule installations of ADT's home alarm systems. *Id.* at ¶38. To facilitate scheduling, ADT allows dealers, including John Doe Caller, access to ADT's internal scheduling system. *Id.* at ¶38. Plaintiff alleges that the third-party caller enters into, and obtains, contracts for monitoring services, which it then sells or assigns to ADT. *Id.* at ¶¶39-40. John Doe Caller also receives sales commissions from ADT for scheduling installations. *Id.*

Plaintiff alleged that in the January 4, 2021 call, a phone representative told Plaintiff that the phone representative was authorized by "home alarm companies" to offer home alarm systems via telephone. *Id.* at ¶46. During the September 1, 2021 call, a phone representative offered Plaintiff a home alarm system from ADT. *Id.* at 47.

ADT authorized and directed John Doe Caller to make the calls in question and ADT is vicariously liable for the calls under a theory of actual authority. *Id.* at ¶¶ 43, 44. Plaintiff asserted that John Doe Caller was operating at the direction of and under control of, and as an agent of, ADT. Compl., Doc. 1-1 at ¶ 53.

In its March 1, 2022 Form 10-K (Amended), which Plaintiff quoted and incorporated into his complaint by reference, ADT identified certain liabilities to its investors. *See Id.* at ¶ 37; ADT's 2022 Form 10-K (Amended), https://investor.adt.com/financials/annual-reports/default.aspx (last accessed January 24, 2025). It warned that it may be held vicariously liable for telemarketing

violations by its independent, third-party authorized dealers. 2022 Form 10-K (Amended) at 36. This includes "violations that are performed without our authorization or that are otherwise prohibited by our policies." *Id.* It further noted that "The FCC, FTC, and state agencies have relied on certain actions to support the notion of vicarious liability, including, but not limited to, the use of our brand or trademark, the authorization or approval of telemarketing scripts, or the sharing of consumer prospect lists." *Id.*

Some of Plaintiff's assertions are conclusory. However, Plaintiff otherwise asserts the following well-pleaded facts:

- In one call, John Doe Caller stated he was authorized to sell home alarm systems by unnamed home alarm companies. Compl., Doc. 1-1 at ¶ 46;
- In another call John Doe caller offered a home alarm system by ADT. *Id.* at ¶47;
- The John Doe Caller enters into contracts for home alarm system sales or monitoring which it then sells to ADT, and ADT otherwise pays sales commissions; *Id.* at ¶¶ 38, 39.
- The John Doe Caller had access to ADT's scheduling system to schedule installations. *Id.* at ¶38; and
- Defendant ADT admits it has authorized dealers call on its behalf. *Id.* at ¶ 37

The Court concludes these facts are sufficient to plausibly allege an agency relationship under an actual authority theory. Therefore, Plaintiff has plausibly alleged that Defendant ADT is vicariously liable.

Because Plaintiff plausibly alleged an agency relationship under an actual authority theory of agency formation, the Court need not address whether Plaintiff plausibly alleged an agency relationship under apparent authority or ratification. *Escano v. Symmetry Fin. Grp. of N. Carolina*, LLC, No. 2:21-CV-0884 RB-GBW, 2022 WL 2072875, at *6 (D.N.M. June 9, 2022) ("a plaintiff is only required to demonstrate one of the common law agency theories in order to hold a defendant vicariously [liable] for another defendant's alleged TCPA violations."), *citing Cunningham v. Cap. Advance Sols., LLC*, No. CV 17-13050 (FLW), 2018 WL 6061405, at *6 (D.N.J. Nov. 20, 2018).

Because Plaintiff has plausibly alleged an agency relationship, ruling on the remaining theories of agency formation would not result in the dismissal of any of Plaintiff's claims.

### III. Statute of limitations.

Defendant challenges two of the fourteen calls, asserting they fall outside the limitations period during which a plaintiff may assert TCPA and New Mexico UPA claims.

Plaintiff alleges that he received two of the challenged calls on June 24 and August 11, 2020. Compl., Doc. 1-1 at ¶¶ 54-55. Plaintiff filed his complaint in state court on August 12, 2024. *See* Doc. 1-1 at 1. The parties appear to agree that the relevant statutes of limitations are four years. *Nance v. L.JK. Dolloff Asosoc's., Inc.*, 126 P.3d 1215, 1220 (N.M. 2005) (New Mexico UPA claims are subject to four-year statute of limitations).

Plaintiff admits that the first call, falling on June 24, 2020, falls outside the limitations period, and he appears to concede that any claim based on that call is barred. The Court will therefore assume it is.

However, Plaintiff asserts his August 11, 2020 call is timely. August 11, 2024, fell on a Sunday. He asserts that under well-established rules of civil procedure, any deadline falling on a weekend or holiday is extended to the end of the next day. Plaintiff asserts he had until the following Monday (August 12) to file his complaint. Defendant does not address this argument or disagree with Plaintiff's analysis in its reply brief. The Court agrees with Plaintiff.

Under either New Mexico rules or Federal Rules of Civil Procedure, when a deadline, including the statute of limitations, falls on a weekend, the period continues to run until the end of the next day. For example, under Fed. R. Civ. P. 6(a)(1)(C), "[w]hen the period is stated in days or a longer unit of time ... include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a

Saturday, Sunday, or legal holiday." Because August 11, 2024 fell on a Sunday, the Court finds that Plaintiff's Complaint was timely filed on Monday, August 12, 2024. *See, e. g.*, *Lewis v. McKinley County Bd. of County Commissioners*, 425 Fed. Appx. 723, 729 (10th Cir. 2011) ("The deadline fell on a Sunday, however, so Ms. Lewis had until Monday, November 29, 2010, to file her complaint."); *Williams v. Aragon*, 2014 WL 4854979, at *9 (D. Colo. Sept. 29, 2014) ("Because August 31, and September 1, 2013 fell on a Saturday and Sunday, respectively, and September 2, 2013 was a legal holiday (Labor Day), Plaintiff's Complaint was timely filed on September 3, 2013."); *Gentry v. Steele*, 2002 WL 35650020, at *2 (D. N.M. April 4, 2002) ("The Court takes judicial notice that February 4, 2001 fell on a Sunday, however. Therefore, pursuant to Rule 6(a) of the Federal Rules of Civil Procedure, Plaintiff had until Monday the 5th to file.").

Therefore, the statute of limitations bars claims premised on the June 24, 2020 call, but the Court declines to dismiss claims based on any other call at this time.

**IV.  New Mexico UPA statutory damages.**

Defendant asserts that even assuming Plaintiff states a New Mexico UPA claim against it, Plaintiff may only seek compensation under the act per "action." N.M. Stat. Ann. § 57-12-10(b). Defendant interprets "action" to mean case, no matter how many unlawful acts were performed by the Defendant. In other words, Defendant asserts that damages are limited to $300 under the New Mexico UPA, despite the fact that Plaintiff asserts five UPA counts challenging fourteen calls. *See* Mot., Doc. 4 at 20.

The New Mexico UPA asserts that damages may be recovered as follows:

> B. Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual

> damages or three hundred dollars ($300), whichever is greater, to the party complaining of the practice.

N.M. Stat. Ann. § 57-12-10. Defendant ADT asserts that damages are limited to $300, no matter how many unlawful acts or practices (i.e., calls) were committed.

The Court sees at least three possibilities for damages against ADT in this case under the New Mexico UPA, assuming Defendant ADT willfully violated the New Mexico UPA:

- Damages are limited to $300 per case, limiting damages here to $300.

- Plaintiff may obtain $300 per unlawful call. Since there are thirteen remaining unlawful calls in this case, damages could reach $3,900 (13 x $300).

- Finally, Plaintiff has asserted five separate UPA counts. If Defendant is found liable under each claim for each unlawful call, damages could reach $19,500 ($3,900 x 5).

In the complaint's prayer for relief, Plaintiff requests in part damages for each of the willful violations of the New Mexico UPA committed by Defendants. Compl., Doc. 1-1 at 16. Plaintiff also requests several other forms of relief. *Id.*

The Court concludes that Defendant ADT's motion is not procedurally proper, as Rule 12(b)(6) tests the sufficiency of a claim or cause of action, not the prayer for relief. Rule 12(b)(6) permits the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a plaintiff's complaint must have sufficient factual matter that if true, states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) ("*Iqbal*"). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must also contain "a demand for the relief sought, which may include relief in the alternative or different types of relief." Fed. R. Civ. P. 8(a)(3).

The prayer for relief is not part of the cause of action. *Schoonover v. Schoonover*, 172 F.2d 526, 530 (10th Cir. 1949); *Howell Petroleum Corp. v. Leben Oil Corp.*, 976 F.2d 614, 622 (10th Cir. 1992) ("A request for damages, however, does not constitute a cause of action; rather damages are a remedy for a legal wrong."); *Daniels v. Thomas,* 225 F.2d 795, 797 (10th Cir.1955). Courts are not bound by the prayer for relief. Fed. R. Civ. P. 54(c).

A Rule 12(b)(6) motion challenges the sufficiency of the claim or cause of action under Rule 8(a)(2), not the prayer for relief under Rule 8(a)(3). *AG Spectrum Company v. Elder*, 181 F. Supp. 3d 615, 617 (S.D. Iowa 2016). "While a Rule 12(b)(6) motion lies if a plaintiff has not stated a claim upon which *any* relief can be granted, under the facts of this case, a Rule 12(b)(6) motion is not the appropriate vehicle for the dismissal of one of [plaintiff's] prayers for relief, which 'is not itself a part of the plaintiff's claim.' " *Id.*, *quoting in part Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir.2002).

> The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose, as numerous cases have held. Thus, the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.

*Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Grp. L.L.C.*, 635 F.3d 1106, 1108 (8th Cir.2011) (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1255 at 508-09 (3d ed. 2004)).

"While a plaintiff is charged with a duty of giving a short and plain statement of the asserted claims and a demand for judgment and relief, Fed.R.Civ.P. 8, the test of a complaint pursuant to a motion to dismiss lies in the claim, not in the demand." *Cassidy v. Millers Cas. Ins. Co. of Texas*, 1 F. Supp. 2d 1200, 1214 (D. Colo. 1998). "Thus, the only issue on a motion dismiss is whether the claim as stated would give the plaintiff a right to any relief, rather than to the particular relief demanded." *Id.* Thus, the issue of appropriate damages or relief is properly addressed at a later

stage in the litigation, such as under Fed. R. Civ. P. 50 or 56. *John B. v. Boyd*, No. CV 02-1543 WJ/RLP, 2003 WL 27384774, at *3 (D.N.M. Sept. 8, 2003) (concluding that Rule 12(b)(6) motion on punitive damages and attorney's fees was not proper); *Strickland v. Associated Food Stores, Inc.*, No. 1:23-CV-30-TS, 2023 WL 4238867, at *2 (D. Utah June 28, 2023) (upon a Rule 12(b)(6) motion, court reasoned that damages are not a cause of action but a type of relief, and the type of damages plaintiff may recover should not be addressed at this stage); *see Celebrity Chefs Tour, LLC v. Macy's, Inc.,* 16 F. Supp. 3d 1159, 1164 (S.D. Cal. 2014) *(*declining to address propriety of punitive damages under the Lanham Act pursuant to a Rule 12(b)(6) motion).

Here, Defendant ADT does not argue that Plaintiff may not entitled to *any* damages, but rather attempts to determine the amount of damages Plaintiff may be entitled to in a Fed. R. Civ. P. 12(b)(6) motion. Defendant ADT asserts Plaintiff is limited to $300 for his UPA claims. As explained above, determining the proper form or amount of relief is not appropriate under Rule 12(b)(6).

## CONCLUSION

For the reasons stated above, the Court denies Defendant's Motion to Dismiss (Doc. 4).

**IT IS THEREFORE ORDERED** that Defendant ADT's Motion to Dismiss (Doc. 4) is **DENIED**.

        /S/
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE